UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIAD ALI DAKROUB,

                                  CASE NO. 15-12484

        *Plaintiff*,           DISTRICT JUDGE DENISE PAGE HOOD
*v.*                            MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 12, 15)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Dakroub is not disabled. Accordingly, **IT IS RECOMMENDED** that Dakroub's Motion for Summary Judgment (Doc. 12) be **DENIED**, that the Commissioner's Motion for Summary Judgment (Doc. 15) be **GRANTED**, and that this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. § 401 *et seq*. (Doc. 2; Tr. 1-

3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 15).

Plaintiff Riad Dakroub was fifty-seven years old as of April 14, 2014, the date of the ALJ's decision. (Tr. 18, 115). His application for benefits was initially denied on January 2, 2013. (Tr. 50). Dakroub requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ Denise M. Martin on October 2, 2014. (Tr. 23-49). Dakroub, represented by attorney Syed Yousef, testified, as did vocational expert ("VE") Cheryl Holseth. (*Id.*). On January 23, 2015, the ALJ issued a written decision in which she found Dakroub not disabled. (Tr. 8-18). On August 16, 2015, the Appeals Council denied review.[1] (Tr. 1-3). Dakroub filed for judicial review of that final decision on July 13, 2015. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but

---

[1] Dakroub included in his submission to the Appeals Council a new exhibit which was not part of the record before the ALJ, namely exhibit 14F. (Tr. 4, 1040-57). These records are of no assistance in determining whether the ALJ's decision was supported by substantial evidence, and the Court is not permitted to consider them. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[T]his court has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review.").

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.       Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

3

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual

4

functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least 18 years old and has a disability that began before age 22 (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Dakroub not disabled under the Act. (Tr. 18). The ALJ found at Step One that Dakroub had not engaged in substantial gainful activity following the alleged onset date, December 20, 2013. (Tr. 13). At Step Two, the ALJ concluded that Dakroub had the following severe impairments: "neuropathy; diabetes; colitis; degenerative disc disease; obesity; chronic renal failure; and a history of kidney transplant." (Tr. 13-15). At Step Three, the ALJ found that Dakroub's combination of impairments did not meet or equal one of the listed impairments. (Tr. 15). The ALJ then found that Dakroub had the residual functional capacity ("RFC") to perform light work, except with additional limitations as follows:

He cannot climb ladders, ropes, or scaffolds. In addition, he can perform no more than occasional climbing of ramps and stairs; and occasional balancing, stooping, kneeling, crouching, and crawling. Further, the claimant would be limited to frequent, but not repetitive, use of foot/leg controls.

(Tr. 15-17). At Step Four, the ALJ found that Dakroub could return to his past relevant work as an owner/general manager, and thus did not proceed to Step Five. (Tr. 17).

### E.   Administrative Record

#### 1.   Medical Evidence

The Court has reviewed Dakroub's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.   Application Reports and Administrative Hearing

##### a.   Dakroub's Function Report

Dakroub completed a function report on January 20, 2014, in which he asserted that he was disabled by kidney disease, kidney transplant, dialysis, diabetes, foot pain, and back pain, among other symptoms. (Tr. 136). He indicated that his feet were numb and that he experienced burning pain in those extremities. (Tr. 138). He did not prepare his own meals due to back pain and difficulty walking or standing. (Tr. 139). He did not perform chores due to difficulty lifting, pushing, and standing. (Tr. 140). He could drive, and shopped in stores once or twice weekly for up to an hour. (*Id*.). He was in constant back and foot pain, and made frequent bathroom trips. (Tr. 141). He watched television daily, could no longer play sports, and could perform "no lifting." (*Id*.). He frequently

visited his doctors' offices and the hospital for check-ups related to his kidney transplant. (*Id.*). He reported difficulty lifting, bending, standing, reaching, walking, kneeling, climbing stairs, and using his hands. (Tr. 142).

Dakroub could walk for about ten minutes before stopping, and could resume after a fifteen to twenty minute break. (Tr. 142). He used a cane for walking "as needed" and on a "daily" basis. (Tr. 143).

### b.      Dakroub's Testimony at the Administrative Hearing

At the October 2, 2014, hearing before the ALJ, Dakroub testified that he worked as a warehouse manager and owner between 1990 and 2013, and ceased working due to symptoms resulting from kidney ailments, including diabetes and foot neuropathy. (Tr. 28). He worked eight to twelve hours daily, performing duties such as acquiring product, and managing employee and customer relationships, but did "not really" lift any heavy weight in that position. (Tr. 29). Dakroub also testified that he sometimes lifted up to thirty or forty pounds of weight at a time, but apparently ceased doing so following a back operation in 2007. (Tr. 30). Dakroub later clarified that he stopped working out "at the end of this last year in December," which is to say December 2013. (Tr. 41). He testified that his job was "mostly . . . a desk job." (Tr. 40).

Dakroub testified that he could manage self-care tasks without difficulty. (Tr. 30). He could sit for about thirty minutes comfortably, stand for ten minutes, and walk for twenty minutes. (Tr. 30-31). He could lift up to fifteen pounds. (Tr. 31). As to neuropathy, he complained of burning, itching pain in both feet. (*Id.*). He recently began

taking Neuropentin 300, which had not yet taken effect but which stood to reduce his neuropathic symptoms. (Tr. 32). As to diabetes, Dakroub stated that his blood sugar was unstable. (Tr. 33). He reported taking "over 30 pills a day," and experienced headache, neck pain, morning dizziness, sleepiness, difficulty sleeping, and weakness. (Tr. 32-34).

Dakroub stated that his days consisted of making coffee, managing his medication, watching television, walking around the block, and talking with friends or family. (Tr. 35). His wife took primary care of his son, including dropping him off at school. (Tr. 35-36). He did not perform household chores "at all," but clarified that he sometimes helps to perform "easy" chores "like towels." (Tr. 36). He could drive for only ten to twenty minutes for fear of falling asleep behind the wheel due to diabetes-related symptoms. (Tr. 37). Dakroub testified that he "used to exercise," but apparently ceased that activity due to foot pain. (Tr. 37). He rarely played with his son, and rarely took his son to the park. (Tr. 38). His back pain was on two occasions severe enough to merit visits to the emergency ward. (Tr. 40).

Dakroub also testified that his condition had worsened since he quit working in December 2013 because of "my diabetes, the sugar, you know, more and they can't control it . . . . Plus, the neuropathy." (Tr. 45).

### c.    The VE's Testimony at the Administrative Hearing

8

The ALJ then called upon the services of a VE to determine Dakroub's ability to perform work. (Tr. 42). The VE found that Dakroub's past relevant work as a warehouse owner and manager was not fully addressed by the Dictionary of Occupational Titles, which has no provision for ownership roles. (Tr. 43). The VE found that Dakroub's position was most similar to the listing for General Manager, performed at the light level of exertion, though Dakroub's allegation that he sometimes lifted up to forty pounds would place the job in the "medium" category of exertion. (*Id.*).

The ALJ asked the VE to assume a hypothetical individual with Dakroub's age, education, and work experience, who could perform work at the light level of exertion, and who could "not climb ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling," and who was limited to "frequent but not repetitive use of foot or leg controls." (Tr. 44). The VE found that such a worker could perform Dakroub's past relevant work as general manager. (*Id.*). However, the VE also confirmed that the hypothetical worker would not be able to return to Dakroub's past relevant work "as the gentleman said he performed it," because Dakroub described work that necessitated lifting at the medium level of exertion. (Tr. 46).

Dakroub closed his testimony by noting that his business ultimately failed because he was the main operator, and was unable to continue his duties due to sleepiness and other ailments. (Tr. 48).

9

### F.     Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both    "acceptable"    and    non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and

the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. §

11

404.1527(c)(2). *See also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.

2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating
> source's medical opinion, supported by the evidence in the case
> record, and must be sufficiently specific to make clear to any
> subsequent reviewers the weight the adjudicator gave to the treating
> source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For

example, an ALJ may properly reject a treating source opinion if it lacks supporting

objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41

(E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995)

(unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's

statements about pain or other symptoms with the rest of the relevant evidence in the

record and factors outlined in Social Security Ruling 96-7p. Credibility determinations

regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of

Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's

credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r

of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing

*Dakroub v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*,

375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating

subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL

12

374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

13

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Dakroub argues that the ALJ erred by: 1) Failing to comply with SSR 96-8p and SSR 86-8; 2) Failing to comply with SSR 96-7p by insufficiently justifying her credibility finding; 3) Insufficiently addressing whether Dakroub's conditions met or equaled a Listed Impairment; 4) Failing to address Dakroub's obesity; 5) Improperly considering Dr. Abufarha's report; and 6) Failing to find that Dakroub was disabled under the Grids. (Doc. 12 at 5-10). These arguments will be addressed in turn.

14

### 1.  The ALJ Properly Complied With SSR 96-8p and 86-8

Dakroub first argues that the ALJ failed to comply with SSR 96-8p by "rush[ing] to the conclusion that the claimant could work at a given exertional level without doing the function-by-function analysis required" by that ruling. (Doc. 12 at 6).

SSR 96-8p provides that an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and describing "the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96–8p, 1996 WL 374184, at *7. Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id*. To meet these demands, the ALJ should offer "a thorough discussion" of the evidence and "a logical explanation" of the symptoms' effects on the individual's capacity to work. Id. These requirements preclude an ALJ from simply stating that his conclusion "was 'based on the medical evidence.'" *Payne v. Comm'r Soc. Sec.*, 402 Fed. Appx. 109, 117–18 (6th Cir. 2010) (quoting the district court's opinion and finding the narrative sufficient because the ALJ did more than say the opinion was supported by evidence).

Dakroub does not explain how the ALJ's decision runs afoul of SSR 96-8p, and instead merely asserts that the decision lacks a function-by-function analysis. (Doc. 12 at 6). Review of the ALJ's decision demonstrates that she addressed Dakroub's neuropathy, diabetes, colitis, dizziness, sleepiness, weakness, fatigue, weight gain, and associated

15

symptoms, along with his ability to walk, sit, stand, lift, and exercise. (Tr. 13-17). The ALJ thus sufficiently analyzed all of Dakroub's functional capabilities insofar as supported by the medical record, and insofar as those ailments might be expected to limit his functional capabilities. No error can be found here.

Dakroub also argues that the ALJ failed to comply with SSR 86-8 by reaching "conclusions . . . . based on assumptions, rather than on the evidence." (Doc. 12 at 6). Dakroub makes no effort to cite SSR 86-8, leaving it to the Court to decipher which portion of that ruling he believes the ALJ violated. Likewise, Dakroub makes no effort to apply the facts of the ALJ's decision to SSR 86-8, thus it cannot be determined which "assumptions" the ALJ made. It is well settled that where a Social Security claimant makes arguments which are "adverted to in only a perfunctory manner," those arguments "are waived." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013). *See also Aarti Hospitality, L.L.C. v. City of Grove City, Ohio*, 350 Fed. Appx. 1, 11 (6th Cir. 2009) ("After setting forth the applicable law on their due process claim, plaintiffs devote one sentence in their appellate brief to 'arguing' why the district court's judgment should be reversed . . . . Accordingly, we deem plaintiffs' appeal of their due process claim forfeited."); *Fielder v. Comm'r of Soc. Sec.*, No. 1310325, 2014 WL 1207865, at *2 (E.D. Mich. Mar. 24, 2014). Dakroub's argument under SSR 86-8 is thus waived.

Even if Dakroub's SSR 86-8 argument was not waived, it would fail. Review of the ALJ's decision reveals no unsupported assumptions regarding Dakroub's condition.

16

On the contrary, the ALJ cites numerous portions of the record, including the findings of Dakroub's physicians, objective medical data, and his own testimony.

### 2.  Dakroub's Credibility Argument is Waived and Unsupported

A heading in Dakroub's brief contains a single line asserting that "ALJ Martin made the assumption that the claimant's testimony was not fully credible, therefore the claimant can do light work." (Doc. 12 at 6). Immediately below that heading, he notes that "credibility findings cannot be substituted for medical evidence." (*Id.*). In his conclusion, Dakroub cites SSR 96-7p, which provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

See SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). Dakroub does not develop his credibility argument beyond referencing SSR 96-7p and concluding, without support, that the ALJ's credibility finding was erroneous. This sort of undeveloped, perfunctory argumentation merits a finding of waiver.

Even if the argument was not waived, the ALJ gave specific reasons for his credibility assessment which are supported by substantial evidence. Foremost, the ALJ found that Dakroub testified that he ceased exercising at a gym in late 2013 (Tr. 41), yet medical records indicate that he injured himself while exercising at a gym in mid-2014

17

(Tr. 587). The ALJ reasonably cited this inconsistency as a good reason to doubt Dakroub's credibility. (Tr. 16). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."); *Evans v. Astrue*, No. 09–10184, 2009 WL 4506435, at *5 (E.D. Mich. Dec. 1, 2009) (holding that an ALJ may consider a claimant's daily activities in conjunction with other evidence of record to conclude that the claimant is less than credible). This inconsistency also suggests that Dakroub retained greater functional capabilities than he alleged in his testimony, providing further reason to discount his asserted limitations. (Tr. 16).

### 3. The ALJ Properly Considered Whether Dakroub's Ailments Met or Equaled a Listing

Dakroub next argues that the ALJ erred in finding that his ailments did not meet or equal a Listed impairment. (Doc. 12 at 7-8). Claimants with severe impairments that meet or equal a listing in the Appendix are deemed disabled without further analysis. 20 C.F.R. § 404.1520(a)(4)(iii). Fitting a claimant into a listing is dispositive and thus demands a higher level of proof: listed impairments preclude any gainful activity, not just substantial gainful activity. *See Sullivan v. Zebley*, 493 U.S. 521, 525 (1990); 20 C.F.R. pt. 404, subpt. P, App. 1. Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c). A claimant must satisfy all of the criteria to meet the listing. *Id. See also Zebley*, 493 U.S. at 530 ("An impairment

18

that manifests only some of those criteria, no matter how severely, does not qualify."). Alternatively, medical equivalence of a listing can occur in three situations where the claimant fails to meet all of the criteria:

> (1) the claimant has a listed impairment but does not exhibit the specified severity or findings, yet has "other findings" that are "at least of equal medical significance" to the criteria; (2) the claimant has a non-listed impairment that is at least of equal medical significance to a listed impairment; or (3) the claimant has a combination of impairments which do not individually meet a Listed Impairment, but are "at least of equal medical significance" to a listing when viewed in totality.

*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 415 n.2 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1526). The ALJ retains discretion at this stage, and does not need to attach "any special significance to the source of a [medical] opinion . . . [regarding] whether an impairment meets or equals a listing." 20 C.F.R. § 404.1527(d)(3). This is particularly true for the first part of the analysis: "'an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings.'" *Stratton v. Astrue*, 987 F. Supp.2d 135, 148 (D. N.H. 2012) (quoting *Galloway v. Astrue*, No. H-07-01646, 2008 WL 8053508, at *5 (S.D. Tex. May 23, 2008)). The Commissioner, however, has qualified the ALJ's discretion to decide equivalence, noting that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180, at *3.

"When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Social Sec. Admin.*, 93 Fed. Appx. 725, 728 (6th Cir. 2004) (citation omitted). Consequently, an ALJ's listing analysis must be viewed in light of the evidence the claimant presents.

Dakroub first notes that "[i]n accordance with . . . Listing . . . 1.04, claimant is suffering from disorders of the spine, based on degenerative disc disease, resulting in a compromise of a nerve root, established by MRI." (*Id.* at 6). While Dakroub does not actually assert that he meets or equals Listing 1.04, a fair reading of his brief suggests that he believes he meets that listing.

Listing 1.04 can be met in three ways: with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 ("Listing 1.04"). Nerve root compression must be accompanied with limited spinal movement, motor and sensory or reflex loss, and positive straight-leg raising tests, both sitting and supine, if the lower back is involved. *Id.* Spinal arachnoiditis must be confirmed by surgery notes, tissue biopsies, or medical imaging. *Id.* Finally, lumbar spinal stenosis is established by imaging studies, "chronic nonradicular pain and weakness," and "inability to ambulate effectively . . . ." *Id.* "Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to

20

independently initiate, sustain, or complete activities." *Id*. § 1.00(B)(2)(b). An individual meets this condition when, for example, they need two crutches or canes, cannot walk without a walker, cannot travel alone, cannot use public transportation, or cannot walk. *Id*.

Dakroub asserts that he meets Listing 1.04 via "degenerative disc disease" and "compromise of a nerve root." (Doc. 12 at 7). Listing 1.04(A) deals with nerve root compression, thus it appears that he believes he meets this subsection of the Listing. Yet Dakroub makes no effort whatsoever to demonstrate that he experiences the other ailments necessary to meet Listing 1.04(A), including "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Listing 1.04(A). It is the claimant's burden to show that she meets or medically equals an impairment in the listings. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). A claimant's failure to specifically detail, in a point-by-point fashion, how he or she meets a listing waives that argument. *See Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *14 (E.D. Mich. Mar. 31, 2014) ("Plaintiff bears the burden of establishing that he meets a particular listing and plaintiff's argument in this regard is not sufficiently developed such that the undersigned can make such a determination. Plaintiff cannot simply make the bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim."). Dakroub's claim that

21

he meets Listing 1.04(A) is thus waived, because he makes no effort whatsoever to point to specific evidence in the record demonstrating that he meets the multifactor criteria listed in that subsection.

Even if Dakroub's Listing 1.04(A) claim was not waived, the Court notes that a review of the record does not demonstrate limited motion of the spine, which is necessary to meet Listing 1.04(A). On the contrary, there is evidence that Dakroub continued working out in the gym through 2014, suggesting that he was not experiencing a significant limitation to back movement. (Tr. 16, 587).

Dakroub next asserts that the ALJ did not "take into account a long-standing history of Colitis, in accordance with section 5.06." (Doc. 12 at 7); 20 C.F.R. 404, subpt. P, app. 1, § 5.06 ("Listing 5.06"). Once again, Dakroub does not actually claim that he meets this Listing, but a fair reading of his brief suggests that he believes he does meet Listing 5.06. Dakroub supports his claim to Listing 5.06 by noting that while he "had no significant weight loss, the medical records contained in the records from Henry Ford (Tr. 479-997) indicate that he has a history of chronic Colitis." (Doc. 12 at 7).

Listing 5.06 deals with inflammatory bowel disease, of which colitis is one variety. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("Inflammatory bowel disease (5.06) includes, but is not limited to, Crohn's disease and ulcerative colitis."). Once again, Dakroub does not assert that he meets the necessary subparts of this Listing, much less point to specific evidence in the record supporting a claim under Listing 5.06. A claimant meets Listing 5.06 if they meet the following criteria:

22

5.06 Chronic ulcerative or granulomatous colitis (demonstrated by endoscopy, barium enema, biopsy, or operative findings). With:
    A. Recurrent bloody stools documented on repeated examinations and anemia manifested by hematocrit of 30 percent or less on repeated examinations; or
    B. Persistent or recurrent systematic manifestations, such as arthritis, iritis, fever, or liver dysfunction, not attributable to other causes; or
    C. Intermittent obstruction due to intractable abscess, fistula formation, or stenosis; or
    D. Recurrence of findings A, B, or C above after total colonectomy; or
    E. Weight loss as described under 5.08.

20 C.F.R. 404, subpt. P, app. 1, § 5.06. While Dakroub is correct that the medical record supports a finding of colitis, he has failed to demonstrate that he satisfies any of the "A" through "E" sub-criteria necessary to meet that Listing. He has thus also waived any argument that he meets this Listing.

Even if Dakroub did not waive his argument, the medical record reveals no findings which could satisfy the sub-criteria of Listing 5.06. Review of the record reveals some evidence of bloody stool (Tr. 195), and anemia (Tr. 200, 221), but there is no indication that these symptoms were "recurrent" as required by Listing 5.06, and Dakroub makes no effort to establish the recurrence of these conditions.

### 4. The ALJ Adequately Addressed Dakroub's Obesity

Dakroub next argues that the ALJ did not properly consider the impact of his obesity on his overall level of functioning. (Doc. 12 at 7). Dakroub is correct that the ALJ offers little specific, reviewable detail on the issue of obesity. The ALJ noted that Dakroub was seventy inches tall and weighed 240 pounds, which computes to a body-

mass index of approximately 34.4, indicating obesity. *See* SSR 02-01p, 2002 WL 34686281. The ALJ also found that Dakroub's obesity was a "severe impairment," and made a general statement that she considered all of Dakroub's impairments in rendering her decision. (Tr. 13-14). The ALJ did not explain in detail how Dakroub's obesity might impact his other severe impairments or functional capacity.

"'Social Security Ruling 02–01p does not mandate a particular mode of analysis,' but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009) (quoting *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411–12 (6th Cir. 2006)); *see also Duncan v. Comm'r of Soc. Sec.*, No. 13-12047, 2015 WL 2405581, at *13 (E.D. Mich. May 20, 2015) (holding that "there is no prescribed analysis required" to satisfy SSR 02-01p).

The question here is whether an ALJ's conclusion that a claimant's obesity is a severe impairment, along with an assertion that all impairments were considered in rendering a decision, is adequate to satisfy SSR 02-01p. The court in *Stone v. Colvin*, No. 14-261-WOB-CJS, 2015 WL 5634322, at *7 (E.D. Ky. Aug. 26, 2015), report and recommendation adopted, No. CV2014261WOBCJS, 2015 WL 5611605 (E.D. Ky. Sept. 21, 2015) addressed a scenario almost identical to the instant case, and concluded that the ALJ's finding that obesity was a "severe" impairment, along with a statement that all impairments were considered at Steps Three through Five, was sufficient to discharge the ALJ's obligations under SSR 02-01p. *See also Ring v. Comm'r of Soc. Sec.*, No. 1:12-

24

CV-197, 2013 WL 4500444, at *10 (E.D. Tenn. Aug. 21, 2013) (reaching the same conclusion where the ALJ found obesity to be a severe impairment, stated that he considered the effect of all impairments during the sequential evaluation process, and plaintiff failed to present evidence that her obesity caused limitations not accounted for in the ALJ's RFC finding); *Jarman v. Colvin*, No. CIV. 13-434-GFVT, 2015 WL 1246292, at *6 (E.D. Ky. Mar. 17, 2015) (same).

Other courts have reached the opposite conclusion. In *Sheeks v. Comm'r of Soc. Sec.*, No. 13-13647, 2015 WL 753205, at *6 (E.D. Mich. Feb. 23, 2015), the court held that an ALJ's finding that obesity was a severe impairment was not sufficient to discharge the ALJ's duty under SSR 02-01p, because that ruling requires ALJs to generate an "assessment . . . of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment," something which the ALJ's decision did not include. Yet the *Sheeks* court also found that the "ALJ's single reference to obesity may not, standing alone, be enough to require remand." *Id*. Similarly, the court in *Smith v. Colvin*, No. 13 CV 5433, 2015 WL 329371, at *9 (N.D. Ill. Jan. 23, 2015) found that an ALJ's boilerplate assurance that he considered obesity was insufficient to satisfy SSR 02-01p in light of the claimant's severe obesity, which might be expected to result in an "effect on his surgically reconstructed ankle." *Id*. Likewise, the court in *Walker v. Comm'r of Soc. Sec.*, No. CV 15-887, 2016 WL 3917438, at *2 (W.D. Pa. July 20, 2016) held that an ALJ's finding that obesity was a severe impairment and assertion that he considered obesity throughout the sequential

25

analysis did not satisfy SSR 02-01p because the RFC discussion included no mention of limitations imposed by obesity. Finally, the court in *Ellis v. Astrue*, No. CIV.A. 09-1212, 2010 WL 1817246, at *4 (E.D. Pa. Apr. 30, 2010) concluded that "[r]emand is required where a claimant alleges obesity, the ALJ finds obesity is a severe impairment, and the ALJ fails to evaluate obesity when determining the RFC."

While the ALJ's review of Dakroub's obesity is minimal, the undersigned concludes that it is sufficient in light of Dakroub's testimony and the medical record. In this case, where Dakroub alleged that he was disabled by physical maladies alone (rather than mental maladies), his obesity might be expected to produce limitations on his ability to walk, sit, stand, lift, and perform other postural and exertional activities. Yet the ALJ found that Dakroub retained a great deal of physical functioning, supported by reference to medical records indicating that Dakroub was exercising at the gym well into 2014, after his alleged onset date and months after he claimed to have ceased exercising. (Tr. 16, 41, 587). This finding not only challenges the credibility of Dakroub's alleged symptoms, it also provides some support for the ALJ's assertion that she considered his obesity throughout the sequential analysis, but nevertheless found that he was capable of performing work despite his combination of ailments. While this analysis is fairly minimal, I find that it distinguishes the ALJ's decision from those in *Alicea* and *Padilla*, and is sufficient to satisfy the ALJ's obligations under SSR 02-01p.

The Court also notes that Dakroub himself placed relatively little emphasis on the impact of his obesity on his overall wellbeing. The issue of weight gain came up at the

26

hearing only when his attorney inquired about it in the course of laying out Dakroub's basic characteristics, alongside his date of birth, age, right handedness, use of eye glasses, and the location of his home. (Tr. 27). Likewise, Dakroub said nothing about his obesity in his function report, instead focusing on the effects of his kidney disease, including diabetes, neuropathy, back pain, somnolence, and lifting limitations. (Tr. 136-42). Dakroub's physicians also had little to say about his obesity, instead focusing on his neuropathy and other kidney-related disorders. In light of the relatively minor role that obesity played in Dakroub's claim for benefits, the ALJ's somewhat cursory treatment of that disorder is sufficient.

Alternately, even assuming that the ALJ failed to comply with SSR 02-01p by insufficiently discussing Dakroub's obesity, Dakroub has waived any argument relating to obesity. Dakroub leaves it to the Court to determine which limitations, if any, result from his obesity. He has not, for instance, laid the ALJ's RFC finding side-by-side with his medical records and demonstrated how his obesity imposes greater limitation than accounted for in the ALJ's RFC. The claimant bears the burden of demonstrating how obesity would limit his or her abilities in a manner not encompassed by the ALJ's RFC finding. *See Boley v. Comm'r of Soc. Sec.*, No. 11-CV-15707, 2013 WL 1090531, at *4 (E.D. Mich. Mar. 15, 2013) ("Accordingly, even assuming the ALJ erred by failing to discuss the effects of her obesity and violated S.S.R. 02–1p, the Social Security Ruling concerning the evaluation of obesity in disability claims, Plaintiff has failed to show this error was harmful such that remand or reversal is warranted. The objection is

27

overruled."). Numerous courts around the country have refused to remand where an ALJ stated that he or she "fully considered obesity," and where the claimant failed to identify specific limitations caused by obesity not incorporated into the ALJ's RFC finding. *See, e.g., Osing v. Colvin*, No. 14-CV-3326, 2016 WL 1060184, at *12 (C.D. Ill. Mar. 15, 2016); *Rix v. Colvin*, No. CV 14-5733 (PGS), 2016 WL 199419, at *10 (D. N.J. Jan. 15, 2016); *Davis v. Comm'r, Soc. Sec. Admin.*, No. SAG-13-3761, 2014 WL 7014500, at *3 (D. Md. Dec. 9, 2014); *Burgess v. Colvin*, No. 2:12-CV-252-WGH-WTL, 2013 WL 1619551, at *6 (S.D. Ind. Apr. 15, 2013); *Palisay v. Comm'r of Soc. Sec.*, No. CIV.A. 11-4857, 2012 WL 3201428, at *14 (D. N.J. Aug. 2, 2012). Dakroub's obesity argument thus presents no cause for remand.

### 5. The ALJ Properly Considered Dr. Abufarha's September 25, 2014 Report

Dakroub next asserts that the ALJ neglected to consider a "report dated 9/25/2014 authored by Dr. Abufarha . . . which clearly supports a finding of disability." (Doc. 12 at 8). Quite to the contrary, the ALJ specifically addressed this report, finding that "the record contains two medical opinions, each from September 2014 (Ex. 8F; 13F.) Essentially, they suggest that the claimant is incapable of full-time work. However, I give little weight to these assessments . . . [because they] are cursory, and the doctors' signatures are virtually illegible. Nor are the opinions well supported." (Tr. 17). The ALJ noted that while both reports provide that Dakroub should avoid all exposure to heat and cold, they fail to provide specific support for that restriction. (*Id*.). The ALJ also notes

28

that these reports "are virtually identical," suggesting that one of the physicians merely parroted the findings of the other, rather than applying "independent, objective thought." (*Id.*). The ALJ gave "some weight" to these reports insofar as they suggested "limitations to some degree." (*Id.*).

Dakroub's assertion that the ALJ neglected to discuss Dr. Abufarha's September 2014 report is thus unfounded and readily dispelled by a reading of the ALJ's decision. The ALJ's discussion of the two physician reports from September 2014 provides good reason to doubt the accuracy of those reports. The ALJ thus gave "good reasons" for providing less weight to these reports, and was not obligated to accept the finding of disability included in those reports. *See Bouschor v. Colvin*, No. 2:15-CV-47, 2016 WL 336099, at *9 (W.D. Mich. Jan. 28, 2016) ("[A]n ALJ may discredit a treating physician's opinion, despite his or her reasonable knowledge of a patient, if that opinion is not supported by objective medical evidence and the ALJ provides reasons for rejecting that opinion."). *See also* 20 C.F.R. § 1527.

In addition, the ALJ properly rejected the report as "cursory." (Tr. 17). Dr. Abufarha's September 2014 assessment is almost entirely composed of check-the-box restrictions, including limitations to weight lifting, sitting, and walking capacities, without any explanation or justification for those restrictions. (Tr. 1037-39). Dr. Abufarha offered only one written sentence in support of his restrictions, stating that Dakroub would require environmental limitations because of a "[h]istory of kidney transplant, ulcerative colitis, [type two diabetes] + neuropathy." (Tr. 1039). The other

29

function assessment largely duplicates these findings, adding only that Dakroub had "significant neuropathy," along with "peripheral neuropathy from [diabetes], transplant medications." (Tr. 476-78). Courts in this circuit have repeatedly found that check-the-box forms offer little insight into a claimant's condition because they offer little support for the physician's conclusions, and may be given less weight on that basis. *See Hernandez v. Comm'r of Soc. Sec.*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016) ("We have previously declined to give significant weight to rudimentary indications that lack an accompanying explanation."); *Boley v. Astrue*, No. 11–10896, 2012 WL 680393, at *18 (E.D. Mich. Feb.10, 2012); *Ahee v. Comm'r of Soc. Sec.*, No. 07–CV–12071, 2008 WL 4377652, at *4 (E.D. Mich. Sept.22, 2008) ("The ALJ has discretion to reject a medical opinion, here a form, when the opinion is not supported by objective medical evidence.").

### 6.   The ALJ Properly Refused to Apply the Medical Vocational Guidelines

Finally, Dakroub argues that the ALJ erred by not finding him disabled pursuant to the Medical Vocational Guidelines ("Grids"), which provide that a claimant will be found disabled if he is i) of advanced age (i.e. 55 or older), ii) limited to sedentary work, and iii) has no transferable skills, or skills which could only be transferred via "very little, if any, vocational adjustment." 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 201.00(f). At the outset, Dakroub ignores that the ALJ found he was capable of "light" work, not the lesser category of "sedentary work," thus even if the Grids did apply, he would not be found disabled on that basis.

30

More importantly, the Grids are applied only if the five-step sequential analysis proceeds beyond Step Four. *See Fetters v. Comm'r of Soc. Sec.*, 160 F. App'x 462, 463 (6th Cir. 2005) ("Use of the Grids is not required at step four of the five-step sequential process prescribed by 20 C.F.R. § 404.1520 for evaluating disabilities."); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 110 (6th Cir. 1989) ("[T]he ALJ had substantial evidence for his conclusion that [the claimant] could perform her past relevant work as an assembler. The Grid is therefore inapplicable to her case."). In this case, the ALJ found that Dakroub could return to his past relevant work as an owner/general manager, and thus did not proceed to Step Five. (Tr. 17). The ALJ thus properly found that Dakroub was not disabled based on her Step Four finding, and ended the sequential analysis at that step.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Dakroub's Motion for Summary Judgment (Doc. 12) be **DENIED**, the Commissioner's Motion (Doc. 15) be **GRANTED**, and that this case be **AFFIRMED**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 1, 2016                         S/ Patricia T. Morris
                                              Patricia T. Morris
                                              United States Magistrate Judge

## **<u>CERTIFICATION</u>**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: August 1, 2016             By <u>s/Kristen Krawczyk</u>
                                           Case Manager